UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| JOHN BRYANT, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>MUTUAL OF OMAHA INSURANCE COMPANY,<br><br>*Defendant.* | Case No. 1:23-cv-414<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff John Bryant ("Plaintiff") by his undersigned counsel, for this class action complaint against Mutual of Omaha Insurance Company, and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities ("Mutual of Omaha" or "Defendant"), alleges as follows:

## I.   INTRODUCTION

1. <u>Nature of Action</u>.  Plaintiff, individually and as class representative for all others similarly situated, brings this action against Mutual of Omaha for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Mutual of Omaha engaged in automated telemarketing in violation of the TCPA using pre-recorded messages that were sent to cellular telephones.

2. Mr. Bryant also alleges that Mutual of Omaha's agent made unsolicited telemarketing calls to Virginia telephone numbers on the National Do Not Call Registry, and that by doing so, Mutual of Omaha has violated the provisions of the Virginia Telephone Privacy Protection Act, Va. Stat. § 59.1-510 *et seq.* ("VTPPA").

3. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

## II.   PARTIES

4. Plaintiff John Bryant is an individual residing in Virginia in this District.

5. Defendant Mutual of Omaha Insurance Company is a Nebraska company with its principal place of business in Nebraska.

6. Defendant engages in telemarketing into this District, as it did with the Plaintiff.

## III.   JURISDICTION AND VENUE

7. <u>Jurisdiction</u>. This Court has subject matter jurisdiction over Plaintiff's TCPA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's TCPA claim arise under the laws of the United States, specifically, 47 U.S.C. § 227.

8. <u>Personal Jurisdiction</u>.  This Court has personal jurisdiction over Mutual of Omaha because it sells insurance in Virginia, and this action arises from calls into Virginia to sell insurance.

9. <u>Venue</u>.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## IV. BACKGROUND

10. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of Section 227(b)(1)(A). 47 U.S.C. § 227(b)(3).

12. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found,

CLASS ACTION COMPLAINT
-3-

automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

14. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote omitted).

15. Virginia has also passed the Virginia Telephone Privacy Protection Act, Va. Stat. § 59.1-510 *et seq.* ("VTPPA") to protect its consumers from unwanted telemarketing.

CLASS ACTION COMPLAINT
-4-

16. It is a violation of the VTPPA to "initiate, or cause to be initiated, a telephone solicitation call to a telephone number on the National Do Not Call Registry …." Va. Stat. § 59.1-514(B).

### V. FACTUAL ALLEGATIONS

17. Mutual of Omaha offers insurance policies to consumers through its network of agents.

18. One of Mutual of Omaha's strategies for marketing Mutual of Omaha's insurance policies and generating new customers is telemarketing done by third parties.

19. This telemarketing includes the use of pre-recorded messages to generate new business for Mutual of Omaha.

20. Recipients of these calls, including Plaintiff, did not consent to receive such telephone calls.

21. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

**Calls to Plaintiff Bryant**

22. Plaintiff Bryant's telephone number, (757-XXX-0212, is registered to a cellular telephone service.

23. That same number is also registered on the National Do Not Call Registry and has been for more than 30 days prior to receipt of the calls at issue in this lawsuit.

24. On August 31, 2022, the Plaintiff received pre-recorded calls from Mutual of Omaha's telemarketer.

25. The call was received from a spoofed Virginia area code telephone number that could not be called back to make a request to not be called again.

26. During the call, an interactive recorded message played, starting with "Hi there. This is Jackie. Are you doing okay today?".

27. The pre-recorded message continued with, "I am a Medicare benefits liaison with Senior Life. According to our records, it looks like you may be eligible for information about ways to reduce or potentially eliminate the costs that Medicare doesn't cover."

28. The pre-recorded voice continued, "Part of my job is to inform Medicare customers and their families, that final expenses and funeral costs can be around 10 or $20,000. That's why it's critical to have a plan in place in order to protect your family from having to pay these expenses."

29. The dialog, cadence, and voice inflections of "Jackie" during each of the statements was identical, evidencing a prerecorded voice.

30. During the call, the Plaintiff was successfully transferred to a licensed insurance agent.

31. Immediately after the transfer, a message was playing stating: "Thank you for calling Mutual of Omaha, your call will be recorded."

32. The licensed insurance agent then joined the call and identified as "Burt Smith with Mutual of Omaha".

33. Mr. Smith attempted to solicit Plaintiff's purchase of an insurance policy from Mutual of Omaha.

34. Mr. Smith provided the telephone number 800-775-6000 as a call back number.

35. That is a number for Mutual of Omaha.

36. Mr. Bryant was not interested and ended the call.

37. Prior to the filing of this lawsuit, Mr. Bryant sent a letter to Mutual of Omaha regarding the pre-recorded call.

38. He did not receive a response.

39. The Plaintiff did not provide his prior express written consent to Defendant to receive the calls.

40. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming

calls. The calls occupied their cellular telephone lines, rendering them unavailable for legitimate communication.

## VI. MUTUAL OF OMAHA'S LIABILITY

41.  For twenty-five years the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

42.  On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

43.  In that ruling, the FCC instructed that sellers such as Mutual of Omaha may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

CLASS ACTION COMPLAINT
-8-

that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

44. The telemarketer was required to promote Mutual of Omaha's products on their telemarketing calls in order to potentially generate new customers, and did so, as they did with the Plaintiff.

45. During this time, Mutual of Omaha was knowingly and actively accepting the business that originated through the illegal telemarketing calls through the issuance of insurance policies.

46. Mutual of Omaha derived a benefit from the telemarketer's interaction with the Plaintiff by the attempted issuance of a policy.

47. Moreover, Mutual of Omaha maintained interim control over the telemarketer's actions.

48. For example, Mutual of Omaha had ability to prohibit it from using pre-recorded methodology to contact potential customers.

49. Mutual of Omaha failed to make such an instruction to the telemarketer, and as a result, is liable for the telemarketer's conduct.

50. Mutual of Omaha also gave interim instructions to the telemarketer by providing the volume of calling and leads it would purchase.

51. Mutual of Omaha gave further interim instructions to the telemarketer by providing the states that those companies were allowed to make calls into and restricting other states that they could not.

52. Indeed, Mr. Bryant has previously been told by Mutual of Omaha that they hired third parties that engage in cold calling.

53. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## VII.    CLASS ACTION ALLEGATIONS

54. <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of Class (the "Classes") defined as follows:

> **TCPA Pre-Record Class:** All persons to whom: (a) Mutual of Omaha and/or a third party acting on Mutual of Omaha's behalf made one or more non-emergency telephone calls; (b) to their cellular telephone numbers; (c) through the use of an artificial or prerecorded

voice; (d) for the purpose of promoting Mutual of Omaha's products; (e) at any time in the last four years through the date of trial.

**Virginia Telephone Privacy Protection Act Do Not Call Registry Class:** All persons in Virginia or with a Virginia area code, who, (1) received a telephonic sales call from Mutual of Omaha and/or a third party acting on Mutual of Omaha's behalf regarding goods or services, (2) to a number on the National Do Not Call Registry (3) from the four years prior to the filing of the complaint through the date of trial.

**Virginia Telephone Privacy Protection Act Failure to Identify Class:** All persons in Virginia or with a Virginia area code, who, (1) received a telephonic sales call from Mutual of Omaha and/or a third party acting on Mutual of Omaha's behalf regarding Mutual of Omaha's goods or services, (2) during which the caller failed to promptly identify themselves by first and last names and/or failed to promptly identify the Defendant as the persons on whose behalf the telephone solicitation was being made (3) from the four years prior to the filing of the complaint through the date of trial.

**Virginia Telephone Privacy Protection Act Caller Identification Class:** All persons in Virginia or with a Virginia area code, who, (1) received a telephonic sales call from Mutual of Omaha and/or a third party acting on Mutual of Omaha's behalf regarding Mutual of Omaha's goods or services, (2) that did not include the transmission of the name of the caller or from a number that did not permit, if called back during regular business hours, an individual to make a request not to receive telephone solicitation calls (3) from the four years prior to the filing of the complaint through the date of trial.

55.   Numerosity.  The Classes are so numerous that joinder of all its members is impracticable.  On information and belief and on the basis of the *en masse* calling practices at issue, the Classes have at least hundreds of members.

56.   Commonality.  There are numerous questions of law and fact common to Plaintiff and members of the Classes.  These common questions of law and fact include, but are not limited to, the following:

      a.      Whether the Defendant used a prerecorded voice;

      b.      Whether the Defendant purchased batches of leads of prospects who had not consented to be called by it;

      c.      Whether Mutual of Omaha is vicariously liable for the telemarketer's acts; and

      d.      Whether Mutual of Omaha's conduct was willful or knowing such that damages should be trebled.

57.    <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the Classes. Plaintiff's claims and those of the Classes arise out of the same course of conduct by Defendant and are based on the same legal and remedial theories.

58.    <u>Adequacy</u>.  Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff has retained competent and capable counsel with experience in TCPA and consumer class action litigation.  Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so.  Neither Plaintiff nor his counsel has interests contrary to or conflicting with those of the proposed Classes.

59.    <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and members of the Classes.  The common issues arising from this conduct that affect Plaintiff and members of the Classes predominate over any individual issues.  For example, the TCPA's statutory damages obviate

CLASS ACTION COMPLAINT
-12-

the need for mini-trials on actual damages. Adjudication of these common issues in a single action has important and desirable advantages, including judicial economy.

60. <u>Superiority</u>. A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Defendant to comply with the TCPA. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant is small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the calls at issue are all automated and because the TCPA articulates bright-line standards for liability and damages.

61. <u>Injunctive and Declaratory Relief is Appropriate</u>. Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a classwide basis.

## VIII. FIRST CLAIM FOR RELIEF
### (Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))

62.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

63.    The foregoing acts and omissions of Defendant and agent constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency calls to the cellular telephone numbers of Plaintiff and members of the Class using an artificial or prerecorded voice.

64.    As a result of violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by Defendant and its agent, Plaintiff and members of the Class are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

65.    Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and its agent from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice.

66.    As a result of knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by Defendant and its agent Plaintiff and members of the

Class are entitled to treble damages of up to $1,500 for each and every call made to their cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

## SECOND CLAIM FOR RELIEF
### Violation of the Virginia Telephone Privacy Protection Act, Va. Stat. § 59.1-514
### On Behalf of Plaintiff and the Virginia Telephone Privacy Protection Act National Do Not Registry Call Class

67. Plaintiff repeats and incorporates the allegations set forth in the prior paragraphs as if fully set forth herein.

68. Plaintiff brings this claim individually and on behalf of the Virginia Telephone Privacy Protection Act National Do Not Call Registry Class Members against Defendant.

69. It is a violation of the VTPPA to "initiate, or cause to be initiated, a telephone solicitation call to a telephone number on the National Do Not Call Registry …." Va. Stat. § 59.1-514(B).

70. A "telephone solicitation call" is a call made "for the purpose of offering or advertising any property, goods, or services for sale, lease, license, or investment …." *Id* at § 59.1-510.

71. Defendant failed to secure prior express written consent from Plaintiff and the Class Members.

72. In violation of the VTPPA, Defendant's agent made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Classes members' prior express written consent even though the Class members were on the National Do Not Call Registry.

73. As a result of Defendant's conduct, and pursuant to § 59.1-515 of the VTPPA, Plaintiff and Classes members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Classes members are also entitled to an injunction against future calls. *Id.*

### THIRD CLAIM FOR RELIEF
**Violation of the Virginia Telephone Privacy Protection Act,
Va. Stat. § 59.1-512
On Behalf of Plaintiff and the Virginia Telephone Privacy Protection
Act Failure to Identify Call Class**

74. Plaintiff repeats and incorporates the allegations of the prior paragraphs as if fully set forth herein.

75. Plaintiff brings this claim individually and on behalf of the Virginia Telephone Privacy Protection Act Failure to Identify Class Members against Defendant.

76. It is a violation of the VTPPA to make or have made a telephonic sales call during which the caller fails to promptly identify themselves by first and last names and/or fails to promptly identify on whose behalf the telephone solicitation is being made. Va. Stat. § 59.1-512.

77. A "telephone solicitation call" is a call made "for the purpose of offering or advertising any property, goods, or services for sale, lease, license, or investment …." *Id* at § 59.1-510.

78. Defendant failed to secure prior express written consent from Plaintiff and the Class Members.

79. In violation of the VTPPA, Defendant's agent made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Classes members without Plaintiff's and the Classes members' prior express written consent even though during the calls the caller failed to promptly identify themselves by first and last names and/or failed to promptly identify the Defendant as the persons on whose behalf the telephone solicitations were being made.

80. As a result of Defendants' conduct, and pursuant to § 59.1-515 of the VTPPA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

**FOURTH CLAIM FOR RELIEF**
**Violation of the Virginia Telephone Privacy Protection Act,**
**Va. Stat. § 59.1-513**
**On Behalf of Plaintiff and the Virginia Telephone Privacy Protection**
**Act Caller Identification Class**

81. Plaintiff repeats and incorporates the allegations of the prior paragraphs as if fully set forth herein.

CLASS ACTION COMPLAINT
-17-

82. Plaintiff brings this claim individually and on behalf of the Virginia Telephone Privacy Protection Act and Caller Identification Class Members against Defendant.

83. It is a violation of the VTPPA to make or have made telephone solicitation calls that do not include the transmission of the name of the caller and/or from numbers that do not permit, if called back during regular business hours, an individual to make a request not to receive telephone solicitation calls. Va. Stat. § 59.1-513.

84. A "telephone solicitation call" is a call made "for the purpose of offering or advertising any property, goods, or services for sale, lease, license, or investment …." *Id* at § 59.1-510.

85. Defendant failed to secure prior express written consent from Plaintiff and the Class Members.

86. In violation of the VTPPA, Defendant's agent made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Classes members without Plaintiff's and the Class members' prior express written consent even though the calls did not include the transmission of the name of the caller and/or were made from numbers that did not permit, if called back during regular business hours, an individual to make a request not to receive telephone solicitation calls.

87. As a result of Defendant's conduct, and pursuant to § 59.1-515 of the VTPPA, Plaintiff and the Classes members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendant from calling telephone numbers advertising their goods or services, except for emergency purposes, to numbers on the National Do Not Call Registry in the future;

B. That the Court enter a judgment awarding Plaintiff and all class members statutory damages for each violation of the TCPA and VTPPA; and

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

D. Such other relief as the Court deems just and proper.

## IX. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

Dated: March 28, 2023

Respectfully submitted,

*/s/ William P. Robinson III*
William P. Robinson III
319 N. Piedmont Street, Suite 1
Arlington, VA. 22203
info@robinsonslaw.com
*Counsel for Plaintiff and the putative Classes*