# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| JOHN BRYANT, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>MUTUAL OF OMAHA INSURANCE COMPANY and BYRON UDELL & ASSOCIATES INC. D/B/A ACCUQUOTE,<br><br>*Defendants*. | Case No: 1:23-cv-414-AJT/LRV |

### DEFENDANT BYRON UDELL & ASSOCIATES INC. D/B/A ACCUQUOTE'S MEMORANDUM OF LAW IN SUPPORT OF ITS <u>MOTION TO DISMISS</u>

Defendant Byron Udell & Associates Inc. d/b/a AccuQuote ("AccuQuote"), by and through its undersigned counsel of record, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Claims against AccuQuote in the First Amended Class Action Complaint ("Amended Complaint") of Plaintiff John Bryant ("Plaintiff") and states as follows.

### I.    INTRODUCTION

The claims in Plaintiff's Amended Complaint (ECF No. 18) arise from allegations of a single call to Plaintiff's phone. Based on that single alleged call, Plaintiff claims that Defendants violated the Telephone Consumer Protection Act's ("TCPA") requirements as to pre-recorded calls and also violated the Virginia Telephone Privacy Protection Act's ("VTPPA") Do Not Call ("DNC") rules. Am. Compl. ¶¶ 1–2.

But nowhere in the Amended Complaint does Plaintiff allege any facts that support his vague insinuation that AccuQuote placed the call or that AccuQuote is vicariously liable for the actions of whomever did place the call. Plaintiff does not plead that AccuQuote took any "steps to physically" initiate or send the alleged call, as is required for direct liability, or that AccuQuote had an agency relationship with or control over any third party who may have done so. Indeed, Plaintiff fails to allege any facts that could trace any purported harm to AccuQuote, and fails to explain how any relief from AccuQuote would redress his alleged injuries.

As a result, Plaintiff does not and cannot meet Article III's requirements for causation or redressability. The Court should dismiss Plaintiff's Amended Complaint as to AccuQuote pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of federal subject matter jurisdiction. In the alternative, and for similar reasons, the Court should dismiss the Amended Complaint as to AccuQuote pursuant to Rule 12(b)(6), for failure to state a valid claim.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that, on August 31, 2022, he received a single pre-recorded voice call to his cell phone number, which he had registered on the National Do Not Call Registry more than 30 days prior to the call. Am. Compl. ¶¶ 22-23. He further alleges that the call was "from Mutual of Omaha's telemarketer." *Id.* ¶ 24. The call allegedly came from a spoofed Virginia area code telephone number that Plaintiff could not reach when he attempted to call the number back. *Id.* ¶ 25.

Upon answering the phone call, Plaintiff contends that he spoke with an interactive pre-recorded voice that identified itself as Jackie, a Medicare benefits liaison with "Senior Life." *Id.* ¶¶ 26-27, 29. He alleges that the pre-recorded message stated that he could be eligible to reduce or potentially eliminate costs, such as funeral expenses, not covered by Medicare. *Id.* ¶¶ 27–28.

2

Plaintiff further alleges that the call was then transferred to a licensed Mutual of Omaha insurance agent who attempted to solicit Plaintiff's purchase of an insurance policy from Mutual of Omaha. *Id.* ¶¶ 30, 33-34. After receiving a Mutual of Omaha callback number, Plaintiff told the insurance agent that he was not interested and ended the call. *Id.* ¶¶ 35-37.

Within the 25 numbered paragraphs setting forth the factual allegations about the single call at issue there are just two references to AccuQuote. *See id.* ¶¶ 17-41. In Paragraph 18, Plaintiff alleges, "[o]ne of Mutual of Omaha's strategies for marketing Mutual of Omaha's insurance policies and generating new customers is telemarketing done by third parties, *including* AccuQuote." *Id.* ¶ 18 (emphasis added). Then, in Paragraph 32, Plaintiff alleges, "[d]uring discovery in this action, Mutual of Omaha has revealed that AccuQuote, or a vendor they retained, made this pre-recorded call." *Id.* ¶ 32. Plaintiff alleges no other facts as to AccuQuote's purported involvement in the single call to Plaintiff that gives rise to this putative class action.

## III. ARGUMENT

Plaintiff does not factually allege that AccuQuote placed the offending call on August 31, 2022, that it was vicariously liable for the unidentified party that placed the call, or that it was vicariously liable for Mutual of Omaha, to whom the call was ultimately connected. The Amended Complaint should therefore be dismissed pursuant to Rule 12(b)(1) for lack of Article III standing, or Rule 12(b)(6) for failure to state a claim.

### A. Plaintiff Lacks Article III Standing.

The Court should dismiss the Amended Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiff fails to plead sufficient facts that could demonstrate that the alleged call is fairly traceable to AccuQuote and can be redressed by AccuQuote. He thus lacks Article III standing.

Rule 12(b)(1) permits a defendant to move for dismissal of a claim based on a court's lack of subject matter jurisdiction. *A. W. ex rel. Wilson v. Fairfax Cnty. Sch. Bd.*, 548 F. Supp. 2d 219, 221 (E.D. Va. 2008). Specifically, "[a] defendant may challenge the court's subject matter jurisdiction in one of two ways: (1) the defendant may raise a 'facial challenge' by arguing that the facts alleged in a complaint are not sufficient to confer subject matter jurisdiction on the court or (2) the defendant may raise a 'factual challenge' by arguing that the jurisdictional allegations made in the complaint are not true." *Brunelle v. Norfolk S. Ry. Co.*, No. 2:18cv290, 2018 WL 4690904, at *2 (E.D. Va. Sept. 28, 2018) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).

"In a facial challenge, the court evaluates the facts in a complaint using the same standard used for a Rule 12(b)(6) motion to dismiss," namely, "all alleged facts are taken as true and the motion must be denied if the complaint alleges facts that, if proven, would be sufficient to sustain jurisdiction." *Id.* (citing *Kerns*, 485 F.3d at 192). Importantly, courts do not accept as true legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Federal district courts are courts of limited subject matter jurisdiction. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)). Accordingly, the Court must determine whether it has jurisdiction over the claims at issue. *Gillison v. Lead Express, Inc.*, No. 3:16cv41, 2017 WL 1197821, at *4 (E.D. Va. Mar. 30, 2017). As provided by Article III of the Constitution, federal courts have subject matter jurisdiction over justiciable cases or controversies. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). The Supreme Court has explained that an "essential and unchanging part of the case-or-controversy requirement" is that a plaintiff must establish Article

4

III standing to sue. *Lujan*, 504 U.S. at 560. In *Spokeo*, the Supreme Court reiterated that, in order to establish standing, a plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant; and[,] (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560-61).

The purpose of "[t]he fairly traceable requirement [is to] ensure[ ] that there is a genuine nexus between a plaintiff's injury and a defendant's alleged illegal conduct." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000) (internal quotation omitted); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (noting that causation for Article III standing requires the "injury in fact" be "fairly traceable" to the defendant's conduct). In turn, the redressability prong of Article III standing determines whether "a plaintiff personally would benefit in a tangible way from the court's intervention." *Friends of the Earth, Inc.*, 204 F.3d at 162 (internal quotation omitted). "This question is linked to the traceability inquiry, because for the Court to be able to redress the injury, that injury 'must result from the actions of the [defendant], not from the actions of a third party beyond the Court's control.'" *Scruggs v. CHW Grp., Inc.*, No. 2:20CV48, 2020 WL 9348208, at *7 (E.D. Va. Nov. 12, 2020) (quoting *Mirant Potomac River, LLC v. EPA*, 577 F.3d 223, 226 (4th Cir. 2009)).

Courts have found unwanted phone calls to be fairly traceable to defendants and, therefore, redressable, "where the plaintiff alleged some factual context surrounding the contested calls that supported an inference that the defendant or its agent had made the call." *Id.* at *4. For example, in *Hurley v. Messer*, the calls at issue were fairly traceable to the defendants, where the plaintiff identified the specific phone numbers used to make the calls and alleged that the phone numbers belonged to the defendants. *Hurley v. Messer*, No. 3:16-9949, 2018 WL 4854082, at *4 (S.D.W.

5

Va. Oct. 4, 2018). Additionally, in *Cordoba v. DIRECTV, LLC*, the Eleventh Circuit held that the plaintiff met the traceability requirement for Article III standing where the plaintiff alleged that he continued to receive the contested phone calls after repeatedly telling DIRECTV and its marketing vendor Telecel to stop calling him. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019).

On the other hand, as the court found in *Scruggs*, a plaintiff's alleged injury set forth was not fairly traceable or redressable by defendant CHW where the plaintiff had alleged only threadbare recitations that CHW had made the telemarketing calls to the plaintiff. 2020 WL 9348208 at *5-6. Specifically, the *Scruggs* court noted that the only fact that the plaintiff offered to connect the calls to CHW was that the "the caller identified himself as associated with CHW." *Id.* at *6. This fact, without additional details regarding the call or caller, was insufficient to support a finding that the alleged conduct was fairly traceable to the defendant. *Id.*

The *Scruggs* court also emphasized that it was not clear from the amended complaint whether the plaintiff had alleged that CHW made the calls or an unknown third-party as the plaintiff stated that "[d]iscovery will confirm that CHW, or someone acting on CHW's behalf, initiated the [] calls" at issue. *Id.* Similarly, in *Hicks v. Alarm.com, Inc.*, the court found the plaintiff had failed to properly plead causation and redressability where there were no facts detailing Alarm.com's involvement in placing any of the text messages or call. *Hicks v. Alarm.com, Inc.*, 1:20-CV-532, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020). Instead, the plaintiff in *Hicks* had alleged that the text messages promoted home alarm services and that the caller identified himself as Mark with "Home Security Promotions." He did not allege that the texts or the caller made any mention of the defendant.

The allegations in *Scruggs* and *Hicks* are analogous to Plaintiff's allegations here, as Plaintiff similarly does not plead any facts to support his conclusion that AccuQuote placed the alleged call. Plaintiff's description of the alleged call includes no mention of AccuQuote from which one could infer that the caller had any connection to AccuQuote. Am. Compl. ¶¶ 22-37. Nor does Plaintiff allege that the phone number from which the call came was or is associated with AccuQuote. *Id.*

Moreover, like the plaintiff in *Scruggs*, Plaintiff acknowledges that AccuQuote did not make the call by qualifying his allegations with the possibility that some other unidentified party made the alleged call. *See* Am. Compl. ¶ 32. ("During discovery in this action, Mutual of Omaha has revealed that AccuQuote, or a vendor they retained, made this pre-recorded call."). Because Plaintiff pleads no facts showing any conduct traceable to AccuQuote, his injury is also not capable of being redressed by AccuQuote. *See Scruggs*, 2020 WL 9348208, at *7 ("Having found that Scruggs failed to adequately allege facts that fairly trace his injury to CHW, the Court also finds that his injury is not redressable, because the conduct could have been caused by a third party not before the Court."). Accordingly, the Court should dismiss Plaintiff's claims as to AccuQuote for lack of subject matter jurisdiction under Rule 12(b)(1) due to a lack of Article III standing.

**B. Plaintiff Fails to State a Claim Because Plaintiff Does Not Allege Any Facts that AccuQuote is Liable for the Purported Call.**

To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The alleged facts must be sufficient to support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Iqbal*, 556 U.S. at 663. While the Court must assume all well-pleaded factual allegations to be true, mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S.

7
49057415.4

at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

Plaintiff fails to state a claim because he does not allege AccuQuote placed the call itself and does not allege facts to support a theory of vicarious liability for the actions of an unidentified third party.

1. Plaintiff Fails to Sufficiently Allege Direct Liability.

Direct liability under the TCPA applies only to persons or entities who "initiate" telemarketing calls and, in this regard, the Federal Communications Commission ("FCC") has made clear—and this Court has held—that to "initiate" means to "physically place" the call. *Scruggs*, 2020 WL 9348208, at *9 ("[T]o establish direct liability under the TCPA, 'courts have concluded that the plaintiff must show that the defendant actually, physically initiated the telephone call at issue.'") (quoting *Aaronson v. CHW Grp., Inc.,* No. 1:18-Ccv-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019); *Hurley*, at *3 (quoting *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7980, ¶ 30 (2015) (internal quotation marks and citations omitted) ("the FCC further stated initiating a telephone call can mean either the person or entity that 'take[s] the steps necessary to physically place a telephone call' or that is's o involved in the placing of a specific telephone call as to be deemed to have initiated it.'")). The VTPPA should be interpreted according to its plain meaning, which would result in a similar interpretation as under the TCPA. *Hicks*, at *5 (stating that the plaintiff's "VT[P]PA claim must fail at this stage" under 12(b)(6) "for similar reasons as the parallel TCPA claim[,]" where the court found no facts regarding the defendant's placing of the calls).

8

Here, Plaintiff alleges no facts from which the Court could infer that AccuQuote initiated the alleged call. Importantly, Plaintiff does not allege that the caller ever mentioned AccuQuote or that the phone number associated with the call is associated with or owned by AccuQuote. *Aaronson*, 2019 WL 8953349, at *4 (noting that facts as to how the caller identified itself, the substance of the calls, and details from the calls are the kind of allegations that "would tend to identify defendant as the party that actually, physically took the steps to place the calls to plaintiffs phone"). Rather, the only allegations Plaintiff makes in regards to AccuQuote are conclusory and cannot be taken as true for the purposes of a 12(b)(6) motion. *See Hicks*, 2020 WL 9261758, at *5 ("While the Court takes well-pleaded factual allegations as true at the motion to dismiss stage, the facts must indeed be 'well-pleaded, nonconclusory factual allegations' to merit the assumption of veracity." (quoting *Iqbal*, 556 U.S. at 680)).

Courts in the Fourth Circuit have consistently found that complaints lacking factual allegations showing the defendant actually initiated the phone calls at issue should be dismissed. *See Hicks*, 2020 WL 9261758, at *5 (dismissing plaintiff's TCPA claim finding that the complaint alleged "no facts detailing Alarm.com's involvement in *placing* any calls."); *Aaronson*, 2019 WL 8953349, at *2 (holding that, "at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's cellular phone") (citing various cases); *see also In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d 514, 519 (N.D.W. Va. 2016), *aff'd sub nom*. 885 F.3d 243 (4th Cir. 2018). Consistent with this precedent, Amended Complaint does not allege *any* factual allegations that AccuQuote physically initiated the call at issue in this case, Plaintiff cannot establish AccuQuote's direct liability.

## 2. Plaintiff Fails to Sufficiently Allege Vicarious Liability.

Plaintiff also fails to allege any facts that would demonstrate AccuQuote's vicarious liability over the unnamed calling party or over Mutual of Omaha. Generally, vicarious liability requires a special consensual relationship between a principal and an agent as well as control over the agent by the principal. *See, e.g.*, *Rowland Marietta, Inc. v. Casdorph*, No. 2:08-00343, 2008 WL 11381425, at *10 (S.D.W. Va. Nov. 26, 2008) ("[T]he concept of agency posits a consensual relationship in which one person . . . acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person. The person represented has a right to control the actions of the agent."). Moreover, in the TCPA context, courts have widely recognized that vicarious liability cannot attach without the "essential ingredient" of control. *See, e.g.*, *Monitronics*, 223 F. Supp. 3d at 520 ("[I]n order to prove actual agency [for vicarious TCPA liability], the plaintiff must show that the defendant controlled or had the right to control the purported agent and, more specifically, the manner and means of the solicitation campaign that was conducted.") (citing *Mey v. Pinnacle Sec., LLC*, No. 5:11CV47, 2012 WL 4009718 (N.D.W. Va. Sept. 12, 2012)).

Courts have found that a plaintiff's failure to allege sufficient facts establishing an agency relationship with or control over an agent is fatal to TCPA claims based on vicarious liability at the pleading stage. In *Scruggs*, for example, the court found that the plaintiff's sparse allegations of the calls in which he merely stated that the caller identified himself as "associated with [the defendant]" was not sufficient to support an inference of vicarious liability. 2020 WL 9348208, at *10. Likewise, in *Aaronson*, the court found that a "conclusory, boilerplate allegation" that "defendant 'acted through its agents, employees, officers, members, directors, heirs, successors,

assigns, principals, trustees, sureties, subrogees, representatives, and insurers,'" was similarly insufficient to show defendant was vicariously liable for contested calls. 2019 WL 8953349, at *3.

The Amended Complaint here suffers from the same deficiencies as those in *Scruggs* and *Aaronson*. Plaintiff fails to plead any facts supporting a claim for vicarious liability against AccuQuote. The Amended Complaint makes one vague and factually unsupported reference to an unnamed vendor of AccuQuote. Am. Compl. ¶ 30 ("During discovery in this action, Mutual of Omaha has revealed that AccuQuote, or a vendor they retained, made this pre-recorded call."). But the Amended Complaint does not allege any facts to support this conclusion. And the facts that Plaintiff does include regarding the phone call, including that the caller identified herself as Jackie and transferred the call to an insurance agent with Mutual of Omaha, do not demonstrate a relationship between AccuQuote and any third party that made the call at issue. Plaintiff's allegation that Mutual of Omaha uses vendors "include[ing]" AccuQuote, (*id.* ¶ 18), speaks volumes: he cannot say with any level of certainty that it was AccuQuote involved with the single call at issue here.

In *Aaronson*, this Court suggested that additional facts would be necessary to support an inference of vicarious liability. These could include: (i) how the caller identified his or her self (*e.g.*, as defendant's employee), (ii) the substance of the call (*e.g.*, a statement by the caller that he or she was marketing defendant's goods or services), or (iii) other call details evidencing an agreement by the caller to on the defendant's behalf and be subject to the defendant's control. 2019 WL 8953349, at *3. There are no such allegations relating to AccuQuote in the Amended Complaint. To the extent Plaintiff seeks to hold AccuQuote vicariously liable under the TCPA and VTPPA, his Amended Complaint fails to allege any facts from which the Court can infer such

11

liability.[1] For this additional reason, the claims against AccuQuote in the Amended Complaint should be dismissed.

## IV. CONCLUSION

For the reasons set forth above, AccuQuote respectfully requests that the Court dismiss AccuQuote from this action due to Plaintiff's lack of Article III Standing or, in the alternative, his failure to state a claim.

Dated: July 21, 2023

Respectfully submitted,

*/s/Francis X. Nolan, IV*
Francis X. Nolan, IV (*pro hac vice*)
**EVERSHEDS SUTHERLAND (US) LLP**
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 389-5083
Facsimile: (212) 389-5099
franknolan@eversheds-sutherland.com

Lewis S. Wiener (*pro hac vice*)
John W. Lomas Jr. (SBN 73148)
**EVERSHEDS SUTHERLAND (US) LLP**
700 Sixth Street N.W., Suite 700
Washington, DC 20001
Telephone: (202) 383-0100
Facsimile: (202) 637-3593
lewiswiener@eversheds-sutherland.com
johnlomas@eversheds-sutherland.com

*Counsel for Byron Udell & Associates Inc.*
*d/b/a AccuQuote*

---

[1] Should the Court grant AccuQuote's motion to dismiss as to Plaintiff's TCPA claim (Count I) but not his VTPPA claims (Counts 2 through 4), the Court should decline to exercise jurisdiction over Plaintiff's VTPPA claims. *See Scruggs*, 2020 WL 9348208, at *11 (declining to exercise supplemental jurisdiction over plaintiff's VPTTA claim after dismissing his TCPA claim).

# CERTIFICATE OF SERVICE

The undersigned certifies that on July 21, 2023, the foregoing Defendant Byron Udell & Associates Inc. d/b/a AccuQuote's Memorandum in Support of its Motion to Dismiss was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*Francis X. Nolan, IV*
Francis X. Nolan, IV