IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOHN BRYANT, *Individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> BYRON UDELL & ASSOCIATES INC. D/B/A ACCUQUOTE, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. 1:23-cv-00414 (AJT/LRV)

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Byron Udell & Associates Inc. d/b/a/ AccuQuote's ("AccuQuote" or "Defendant") Motion to Dismiss under Rule 12(b)(1) and 12(b)(6) (the "Motion"), [Doc. No. 36]. Plaintiff John Bryant's ("Bryant" or "Plaintiff") First Amended Class Action Complaint ("FAC"), [Doc. No. 18], alleges violations of state and federal telemarketing laws. The Motion is currently set for a hearing on August 16, 2023 at 10:00 a.m. The Motion is fully briefed, and because oral argument will not assist the decisional process, and in accordance with Local Civil Rule 7(J) and Fed. R. Civ. P. 78, the Motion will be resolved on the basis of the papers filed with the Court.[1]  For the following reasons, the Court will grant the motion with leave for Plaintiff to file a second amended complaint to address the deficiencies identified below.

### I. BACKGROUND

This action stems from Plaintiff's receipt of a single unwanted telephone call soliciting insurance policies that purportedly violated federal and state telemarketing laws. The Complaint

---

[1] For this reason, the hearing is canceled and Plaintiff's Motion to Appear Without Local Counsel, [Doc. No. 47], is denied.

1

names both AccuQuote and Mutual of Omaha Insurance Company as Defendants. However, on July 24, 2023, Plaintiff and Defendant Mutual of Omaha filed a notice of settlement, [Doc. No. 40]. On August 9, 2023, Plaintiff moved to voluntarily dismiss with prejudice Mutual of Omaha, [Doc. No. 46], which the Court granted, [Doc. No. 48].

As alleged in the FAC, Plaintiff's cell phone number was registered on the National Do Not Call Registry, yet on August 31, 2022, Plaintiff received a pre-recorded call from a spoofed Virginia area code that did not allow callbacks. FAC ¶¶ 22-25. The pre-recorded call solicited information about reducing or eliminating costs not covered by Medicare, and Plaintiff was soon transferred to a licensed insurance agent for more information. *Id.* at ¶¶ 27-30. While the pre-recorded caller originally identified herself as "Jackie" calling on behalf of "Senior Life," upon transfer to a live agent, a message immediately played thanking Plaintiff for calling Mutual of Omaha. *Id.* at ¶¶ 26-27, 30-31. A live agent then joined the call who identified himself as "Burt Smith with Mutual of Omaha," following which Plaintiff ultimately terminated the call. *Id.* at ¶¶ 33, 37. According to Plaintiff, "[d]uring discovery in this action, Mutual of Omaha has revealed that Accuquote, or a vendor they retained, made this pre-recorded call." *Id.* at ¶ 32. Plaintiff further alleges that "[o]ne of Mutual of Omaha's strategies for marketing Mutual of Omaha's insurance policies and generating new customers is telemarketing done by third parties, including Accuquote" to individuals who did not consent to such calls. *Id.* at ¶¶ 18-20. Plaintiff, on behalf of himself and the proposed class, purports to "have been harmed by the acts of Defendant because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls [and] [t]he calls occupied their cellular telephone lines, rendering them unavailable for legitimate communication." *Id.* at ¶ 41.

Plaintiff identifies four separate classes and will presumably seek class certification under Rule 23(b)(3).[2] Plaintiff alleges four counts in the FAC: (1) Violations of the Telephone Consumer Protection Act) ("TCPA"), 47 U.S.C. § 227(b)(1)(A); (2) Violation of the Virginia Telephone Privacy Protection Act ("VTPPA"), Va. Code § 59.1-514; (3) Violation of the VTTPA, Va. Code § 59.1-512; and (4) Violation of the VTPPA, Va. Code § 59.1-513. The claims for relief are principally based on (a) non-emergency calls to cellular numbers using artificial or prerecorded voice (Count I); (b) calls made to numbers listed on the National Do Not Call Registry without prior express written consent (Count II); (c) telephonic solicitation calls where the caller failed to identify themselves by their first and last names and/or failed to promptly identify on whose behalf the call was made (Count III); and (d) recipients' inability to call back the original caller (Count IV). FAC at ¶¶ 65-90. Each count carries a statutory penalty of $500 for first offenses; a willfulness finding may result in treble damages available for Count I and up to $5,000 for Counts II-IV. *See* 47 U.S.C. § 227(b)(3) (Count I); Va. Code § 59.1-515 (Counts II-IV). Plaintiff also seeks injunctive relief to prohibit Defendant from making phone calls to numbers on the National Do Not Call Registry. FAC at p. 20. AccuQuote moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or, in the alternative, Rule 12(b)(6) for failure to state a claim. [Doc. No. 37] at 2.

## II. LEGAL STANDARD

**A. Rule 12(b)(1)**

Federal courts are courts of limited jurisdiction with specific jurisdictional requirements and limitations, possessing only the jurisdiction authorized them by the United States Constitution and federal statute. *United States* ex rel. *Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009); *see*

---

[2] Because such a Motion is not now before the Court, the propriety of any prospective classes will not be addressed herein.

*also United States v. Mitchell*, 683 F. Supp. 2d 427, 428 (E.D. Va. 2010). "Article III of the Constitution requires a litigant to possess standing to sue in order for a lawsuit to proceed in federal court." *Ali v. Hogan*, 26 F.4th 587, 595 (4th Cir. 2022) (citation omitted). Without Article III standing, the Court is left without subject matter jurisdiction. *Id.* at 595-96 ("Standing is an 'irreducible constitutional minimum' that must be satisfied in all cases." (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, (1992))). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Rule 12(b)(1) is the appropriate vehicle to contest subject matter jurisdiction, and when confronted with a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing the court's subject matter jurisdiction. *Trinity Outdoor, L.L.C. v. City of Rockville*, 123 F. App'x 101, 105 (4th Cir. 2005) (per curiam). Where a defendant mounts a facial challenge to subject matter jurisdiction, the defendant is in essence "arguing that the facts alleged in a complaint are not sufficient to confer subject matter jurisdiction." *Brunelle v. Norfolk S. Ry. Co.*, No. 2:18-cv-290, 2018 WL 4690904, at *2 (E.D. Va. Sept. 28, 2018). In that case, Rule 12(b)(6) procedural protections apply, i.e., the facts alleged are taken as true. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). If a district court lacks subject matter jurisdiction over an action, the action must be dismissed. *Jadhav*, 555 F.3d at 347.

**B. Rule 12(b)(6)**

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) should be granted unless the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). This "requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). In considering a Rule 12(b)(6) motion, the Court must construe the complaint, read as a whole, in the light most favorable to the plaintiff and take the facts asserted therein as true. *LeSueur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012). The general pleading standard requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . [and that] give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188 (4th Cir. 2007) (quotations omitted); *see also* Fed. R. Civ. P. 8(a)(2). *Twombly* established that the "plain statement" must "possess enough heft"—that is, "factual matter"—to set forth grounds for the plaintiff's entitlement to relief "that is plausible on its face." 550 U.S. at 557, 570. The complaint must contain sufficient factual allegations that, taken as true, "raise a right to relief above the speculative level" and "across the line from conceivable to plausible." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (internal citations and quotations omitted).

### III. ANALYSIS

**A. Rule 12(b)(1): Subject Matter Jurisdiction**

Here, AccuQuote mounts a facial challenge to the Court's subject matter jurisdiction. *See* [Doc. No. 37] ("Plaintiff [] does not plead any facts to support his conclusion that AccuQuote placed the alleged call"). Accordingly, in evaluating the Rule 12(b)(1) Motion the Court will

accept the non-conclusory allegations in the Complaint as true to evaluate whether Plaintiff possesses standing. *Kerns*, 585 F.3d at 192.

Plaintiff contends that Fourth Circuit precedent instructs that the Motion is improper under Rule 12(b)(1). *See* [Doc. No. 44] at 3-5 (citing *Holloway v. Pagan RiverDockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012) ("The failure to state the elements of a federal claim can form the basis of a Rule 12(b)(1) motion only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (internal quotation marks and citations omitted))))). However, as an initial matter, *Holloway* does preclude the Court from resolving the Motion on Rule 12(b)(1) grounds. In *Holloway*, the district court evaluated whether certain elements of the federal claim were sufficiently satisfied, to wit, whether the plaintiff qualified as a "seaman" under the Jones Act, *Holloway*, 669 F.3d at 450-52, not about threshold requirement of standing. Indeed, the Fourth Circuit in *Holloway* characterized a Rule 12(b)(1) motion as one that addresses a plaintiff's "right to be in the district court at all," not about whether a claim is cognizable. *Id.* at 452. Here, AccuQuote is not arguing in the Rule 12(b)(1) context that Plaintiff has failed to meet the particular elements of the TCPA or VTPPA, which would clearly be more appropriate under Rule 12(b)(6) or Rule 56. Rather, AccuQuote contends that Bryant has not established his right to be in federal court at all because he has failed to establish the immutable standing requirements that are necessary predicates to any federal court action. Therefore, addressing this matter under Rule 12(b)(1) is not inconsistent with *Holloway*.[3]

---

[3] In any event, were the Court to consider the Motion under Rule 12(b)(6), as AccuQuote has pled in the alternative, it would reach the same result. *See infra* Sec. III(B).

First, Plaintiff has sufficiently alleged an injury in fact based on purported privacy violations, annoyance, and harassment.[4] FAC at ¶ 41. The second requirement presents the central question: whether the injury is fairly traceable to AccuQuote's purported conduct. In that respect, in the FAC's "Factual Allegations" section, AccuQuote is only mentioned twice.[5] Specifically:

> 18. One of Mutual of Omaha's strategies for marketing Mutual of Omaha's insurance policies and generating new customers is telemarketing done by third parties, including Accuquote.
> ***
> 32. During discovery in this action, Mutual of Omaha has revealed that Accuquote, or a vendor they retained, made th[e] pre-recorded call [to Bryant].

FAC at ¶¶ 18, 32. That is the extent of Plaintiff's allegations against AccuQuote.[6]

In a similar case where a plaintiff alleged TCPA and VTPPA violations for unwanted telemarketing calls, a Magistrate Judge in this District issued a thorough report and recommendation[7] summarizing the law as follows:

> [C]ourts have found that unwanted calls in the TCPA context were "fairly traceable" to defendants where the plaintiff alleged some factual context surrounding the contested calls that supported an inference that the defendant or its agent had made the call . . . . On the other hand, courts have found that contested phone calls were not fairly traceable to a defendant where plaintiffs have failed to allege non-conclusory facts that support an inference linking the defendant to the calls.

*Scruggs v. CHW Grp., Inc.*, No. 2:20-cv-48, 2020 WL 9348208, at *4-5 (E.D. Va. Nov. 12, 2020). In *Scruggs*, the unwanted telemarketer actually identified himself as associated with the defendant. *Id.* at *1. Nevertheless, the court still dismissed the case after determining that there was no factual

---

[4] While Plaintiff alleges that some prospective class members were charged for incoming calls, he has not alleged that he suffered this injury and therefore the Court will not consider it.
[5] Notably, while there is an entire section dedicated to "Mutual of Omaha's Liability," FAC at p. 8, no such section exists for AccuQuote.
[6] Plaintiff also points to its allegation in the first introductory paragraph of the FAC, where he states that "Mutual of Omaha hired Accuquote [sic], who engaged in automated telemarketing in violation of the TCPA using pre-recorded messages that were sent to cellular phones." [Doc. No. 44] at 2 (quoting FAC at ¶ 1). But that is a general allegation not specific to the single call that Plaintiff received.
[7] Before the district court could act on the report and recommendation, the plaintiff noticed his dismissal of the action.

7

basis to trace the calls to the defendant and that "the alleged conduct could have been attributed to an unrelated third party." *Id.* at *5. Given that here, unlike in *Scruggs*, AccuQuote was never identified on the call, the connection—or lack thereof—between the call and AccuQuote is even more attenuated. Similarly, in *Hurley v. Messer* the district court granted a motion to dismiss in a TCPA action where the defendant was retained to read the script in the pre-recorded message. No. 3:16-9949, 2018 WL 4854082, at *3 (S.D.W. Va. Oct. 4, 2018). The court concluded that general allegations that a defendant "planned, created, broadcasted and initiated the telephone calls" were "merely legal conclusions that are unsupported by any factual allegations." *Id.* at *4 (internal quotations and citations omitted). The generality and lack of specificity in *Hurley* is comparable to Plaintiff's allegations here.

Plaintiff principally cites three purportedly analogous yet out-of-circuit cases for the proposition that he has alleged sufficient facts to defeat Defendant's Rule 12(b)(1) Motion. Plaintiff cites *Stemke v. Marc Jones Constr., LLC*, where the district court found sufficient facts to suggest defendant made the calls in question. No. 5:21-cv-274, 2021 WL 4340424, at *3 (M.D. Fla. Sept. 23, 2021). But in *Stemke*, the plaintiff's attorneys were able to call back the number that made the telemarketing solicitation and confirm it belonged to the defendant. *Id.* at *1. This is highly distinguishable from the instant case, where Plaintiff specifically pled that the single call he received "could not be called back," FAC at ¶ 25; therefore, Plaintiff, unlike the plaintiff in *Stemke*, could not have identified AccuQuote as the caller. Plaintiff also cites *Abramson v. AP Gas & Elec. (PA), LLC* ("*AP Gas*"), where the court found Article III standing. No. 22-1299, 2023 WL 1782728, at *5 (W.D. Pa. Feb. 6, 2023). But in that case, the sole defendant was the entity that was providing the solicited services, not that entity's vendor. *Id.* at *1. In other words, *AP Gas* would only be relevant if Mutual of Omaha was still a defendant and it filed a motion to dismiss.

Indeed, unlike in *AP Gas*, where the plaintiff was specifically told that the call was made on behalf of AP Gas, here "AccuQuote" was never named in the solicitation. Lastly, Plaintiff cites *Abramson v. Josco Energy USA, LLC* ("*Josco Energy*") for the same proposition, but like in *AP Gas*, the sole defendant was the entity on whose behalf services were solicited; moreover, the defendant was actually named on the call. No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *4 (W.D. Pa. Aug. 1, 2022). This makes *Josco Energy* similarly distinguishable as the only remaining defendant in this case is AccuQuote, not Mutual of Omaha.

While the Court must accept as true all well-pleaded facts, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that defendant is liable." *Twombly*, 550 U.S. at 570. Here, Plaintiff contends that "Mutual of Omaha specifically and unequivocally identified Accuquote as the party that called Plaintiff." [Doc. No. 45] at 11. But that assertion is clearly not supported by the allegations in the FAC, which contains only broad, conclusory and ambiguous allegations about AccuQuote's involvement; and "a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Baltimore v. Baltimore City L. Dep't*, No. 22-1901, 2022 WL 17812642, at *2 (D. Md. Dec. 16, 2022) (citation and quotation omitted). In that regard, the FAC only alleges as to AccuQuote that "[d]uring discovery in this action, Mutual of Omaha has revealed that Accuquote, or a vendor they retained, made this pre-recorded call." [Doc. No. 18] at ¶ 32. Unclear is whether "they" in paragraph 32 refers to Mutual of Omaha or AccuQuote, although given that elsewhere in the FAC, Plaintiff has made clear that AccuQuote was simply *one* of the telemarketing third parties that Mutual of Omaha retained, *see id.* at ¶ 18 ("One of Mutual of Omaha's strategies for marketing . . . is telemarketing done by third part**ies**, including Accuquote.") (emphasis added to reflect plurality), the more natural and logical reading

9

is that "they" refers to Mutual of Omaha, rather than AccuQuote.[8] *Cf. Trade Assocs. Grp., Ltd. v. United States*, 128 F. Supp. 3d 1322, 1331 (Ct. Int'l Trade 2015) ("the pronoun 'they' must be read to have as its antecedent the [first] subject of the [prior] sentence") (cleaned up); *State Farm Mut. Auto. Ins. Co. v. Estate of Blanchard*, No. 1:06-cv-345, 2008 WL 4187948, at *8 (N.D. Miss. Sept. 8, 2008) ("Effective pronoun use requires that the antecedent (the noun or noun phrase to be replaced) be clearly identified by preceding text."). And if "they" refers to Mutual of Omaha, then Plaintiff has failed to plead with sufficient detail that the telemarketing call was "fairly traceable" to AccuQuote. But even if the Court reads "they" in paragraph 32 as referring to AccuQuote,[9] the allegations are still insufficient to plausibly allege liability on the part of AccuQuote, as opposed to this mysterious vendor that AccuQuote may have "retained." And without any indication of the nature of the relationship or terms of agreement between AccuQuote and its unknown vendor, the connection between the wrongful conduct and AccuQuote is entirely speculative and not fairly traceable to it. *See Bennett v. Spear*, 520 U.S. 154, 167 (1997) ("the injury must be fairly traceable . . . and not the result of the independent action of some third party not before the court").

Similarly, because Plaintiff has not sufficiently alleged traceability, he cannot show that a favorable judicial decision is likely to redress his injury. *See Mirant Potomac River, LLC v. EPA*, 577 F.3d 223, 226 (4th Cir. 2009) (noting the close connection of the causation and redressability elements of standing). Therefore, Plaintiff has failed to establish standing and the Court is thus without subject matter jurisdiction and will grant the Motion under Rule 12(b)(1).[10]

---

[8] For a comprehensive lesson on pronouns, modifiers, and referents, *see Goldberg v. Companion Life Ins. Co.*, 910 F. Supp. 2d 1350, 1351-54 (M.D. Fla. 2012) ("The effect of properly (or improperly) placing a modifier is palpable, and examples of misplacement are legion, sometimes humorous but sometimes disastrous.").

[9] Courts are to "construe complaints liberally by interpreting ambiguous text in the complaint in the light most favorable to the plaintiff." *Aktieselskabet v. Fame Jeans, Inc.*, 525 F.3d 8, 20 n.8 (D.C. Cir. 2008).

[10] Nevertheless, the Court will grant Plaintiff leave to amend his complaint to clarify his allegation in paragraph 32 and shed more light on the purported discovery revelation by Mutual of Omaha.

### B. Rule 12(b)(6): Failure to State a Claim

In the alternative, AccuQuote urges dismissal under Rule 12(b)(6) on the grounds that Plaintiff "does not allege AccuQuote placed the call itself and does not allege facts to support a theory of vicarious liability for the actions of an unidentified third party." [Doc. No. 44] at 8. For the following reasons, dismissal is also warranted on Rule 12(b)(6) grounds.

#### i. Direct Liability

As this Court, Judge Ellis presiding, has held, TCPA direct liability requires the plaintiff "show that the defendant actually, physically initiated the telephone call at issue." *Aaronson v. CHW Grp., Inc.*, No. 1:18-cv-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019). "Accordingly, at the pleading stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's cellular phone." *Id.* The same requirements apply to the VTTPA claim. *See Hicks v. Alarm.com Inc.*, No. 1:20-cv-532, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (finding a TPCA claim failed because "there are no facts detailing [defendant's] involvement in *placing* any calls," and that therefore a "parallel" VTTPA claim failed for the same reasons) (emphasis in original).

Here, Plaintiff has adduced no facts to suggest that AccuQuote initiated the telephone call outside of conclusory allegations and unspecified discovery from Mutual of Omaha that was both (a) devoid of supporting fact and detail and (b) inconclusive as to whether AccuQuote, one of AccuQuote's vendors, or another one of Mutual of Omaha's vendors completely unrelated to AccuQuote placed the call. Therefore, Plaintiff has failed to state a claim on the TCPA or VTTPA counts under a direct liability theory.

ii. Vicarious Liability

TCPA liability may attach to a defendant through formal/actual authority, express or implied, or apparent authority; while such inquiries are typically fact-driven, they can be resolved pre-trial "where the evidence would not permit a reasonable jury to find for the nonmoving party." *In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d 514, 520 (N.D.W. Va. 2016). If "they" in paragraph 32 of the FAC refers to Mutual of Omaha, then clearly there can be no vicarious liability. But even if, assuming *arguendo*, Plaintiff was alleging that the single call was made by a vendor retained by AccuQuote, vicarious liability cannot attach without identifying this vendor and what instructions may have been given to it. *See Worsham v. Direct Energy Servs., LLC*, No. 20-193, 2021 WL 948819, at *5-6 (D. Md. Mar. 12, 2021) ("[Plaintiff]'s inability to identify the caller makes proof of ratification impossible . . . . [Plaintiff] cannot even establish that the caller or callers had an agreement with [Defendant] because the identity of the callers remains unknown."). Accordingly, Plaintiff has failed to state a claim on the TCPA or VTTPA counts under a vicarious liability theory.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant AccuQuote's Motion to Dismiss, [Doc. No. 36], be, and the same hereby is, GRANTED and this action is DISMISSED; and it is further

**ORDERED** that Plaintiff be, and the same hereby is, GRANTED LEAVE TO AMEND the First Amended Class Action Complaint within fourteen (14) days of the date of this Order; and it is further

**ORDERED** that the hearing currently scheduled for Wednesday, August 16, 2023 at 10:00 a.m. be, and the same hereby is, CANCELED; and it is further

**ORDERED** that Plaintiff's Motion for Leave to Appear Without Local Counsel at the Hearing, [Doc. No. 47], be, and the same hereby is, DENIED AS MOOT.

The Clerk is directed to forward copies of this Order to all counsel of record.

August 11, 2023
Alexandria, Virginia

Anthony J. Trenga
Senior U.S. District Judge